No. 25-1936

IN THE
# United States Court of Appeals for the Federal Circuit

NETLIST, INC.,

*Plaintiff-Appellee,*

*v.*

MICRON TECHNOLOGY TEXAS, LLC, MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR PRODUCTS, INC.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Eastern District of Texas
No. 2:22-cv-00294-JRG, Hon. Rodney Gilstrap

## REPLY BRIEF OF DEFENDANTS-APPELLANTS MICRON TECHNOLOGY TEXAS, LLC, MICRON TECHNOLOGY, INC., AND MICRON SEMICONDUCTOR PRODUCTS, INC.

Jared Bobrow
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025

Michael R. Rueckheim
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA  94111

E. Joshua Rosenkranz
Emily W. Villano
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

Melanie L. Bostwick
Robbie Manhas
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Avenue, NW
Washington, DC  20037

*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................ 2

    I.     Netlist Failed To Prove '912 Infringement ........................... 2

          A.    There is no substantial evidence under the claim's only reasonable reading. ............................................... 3

          B.    Substantial evidence is absent under Netlist's mistaken claim interpretation. ..................................... 9

    II.    The '912 Damages Award Should Be Vacated For Lack Of Apportionment. ........................................................... 15

          A.    Netlist failed to apportion. .......................................... 15

          B.    Micron preserved its apportionment challenge in terms of both insufficiency and inadmissibility. ......... 23

               1.    Micron preserved insufficiency post-trial. .......... 23

               2.    Micron preserved inadmissibility at *Daubert*. ... 25

          C.    The proper remedy is vacatur, not remittitur. ............ 28

    III.   The '417 Damages Award Should Be Vacated For Lack Of Apportionment. ........................................................... 29

          A.    Netlist failed to apportion. .......................................... 29

          B.    Micron preserved its apportionment challenges. ......... 35

    IV.   Both Damages Awards Are Based On A Technically Noncomparable Rambus License. ....................................... 38

CONCLUSION ........................................................................... 40

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adasa Inc. v. Avery Dennison Corp.,*
55 F.4th 900 (Fed. Cir. 2022)......................................................... 38, 39

*Apple Inc. v. Motorola, Inc.,*
757 F.3d 1286 (Fed. Cir. 2014) ..................................................... 19, 20

*Avid Tech., Inc. v. Harmonic, Inc.,*
812 F.3d 1040 (Fed. Cir. 2016) ............................................................6

*Comcast IP Holdings I LLC v. Sprint Commc'ns Co.,*
850 F.3d 1302 (Fed. Cir. 2017) ...........................................................6

*Cordis Corp. v. Bos. Sci. Corp.,*
658 F.3d 1347 (Fed. Cir. 2011) .........................................................24

*Crawford v. Falcon Drilling Co.,*
131 F.3d 1120 (5th Cir. 1997)...........................................................28

*EcoFactor, Inc. v. Google LLC,*
137 F.4th 1333 (Fed. Cir. 2025).......................................................40

*Eli Lilly & Co. v. Aradigm Corp.,*
376 F.3d 1352 (Fed. Cir. 2004) .........................................................22

*Eon Corp. IP Holdings v. Silver Spring Networks,*
815 F.3d 1314 (Fed. Cir. 2016) .......................................................6, 7

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.,*
955 F.3d 1317 (Fed. Cir. 2020) .........................................................28

*Ericsson, Inc. v. D-Link Sys., Inc.,*
773 F.3d 1201 (Fed. Cir. 2014) ............................................. 20, 21, 39

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
879 F.3d 1299 (Fed. Cir. 2018) .........................................................24

*Freshub, Inc. v. Amazon.com, Inc.*,
    93 F.4th 1244 (Fed. Cir. 2024)................................................................5

*Garretson v. Clark*,
    111 U.S. 120 (1884)..............................................................................21

*Hewlett-Packard Co. v. Mustek Sys.*,
    340 F.3d 1314 (Fed. Cir. 2003) ............................................................5

*Homeland Housewares, LLC v. Whirlpool Corp.*,
    865 F.3d 1372 (Fed. Cir. 2017) ..........................................................10

*Jiaxing Super Lighting Elec. Appliance, Co. v. CH Lighting
    Tech. Co.*,
    146 F.4th 1098 (Fed. Cir. 2025)..........................................................36

*Kearns v. Gen. Motors Corp.*,
    94 F.3d 1553 (Fed. Cir. 1996) ............................................................35

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ................................................ 20, 21, 39

*MobileMedia Ideas LLC v. Apple Inc.*,
    780 F.3d 1159 (Fed. Cir. 2015) ..........................................................15

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000)..............................................................................27

*Omega Pats., LLC v. CalAmp Corp.*,
    13 F.4th 1361 (Fed. Cir. 2021)............................................................24

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................6

*Promega Corp. v. Life Techs. Corp.*,
    875 F.3d 651 (Fed. Cir. 2017) ............................................................29

*Saposnekoo v. Dep't of Navy*,
    835 F.2d 871 (Fed. Cir. 1987) ............................................................24

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966)..............................................................................18

*Summit 6, LLC v. Samsung Elecs. Co.,*
 802 F.3d 1283 (Fed. Cir. 2015) ........................................................ 20

*Virnetx, Inc. v. Cisco Sys., Inc.,*
 767 F.3d 1308 (Fed. Cir. 2014) ................................................. 22, 40

*Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.,*
 225 U.S. 604 (1912) ............................................................................. 33

*Wis. Alumni Rsch. Found. v. Apple Inc.,*
 905 F.3d 1341 (Fed. Cir. 2018) ..................................................... 6, 7

## Rules and Regulations

Fed. R. Evid. 103(e) ......................................................................... 28

Fed. R. Evid. 403 .............................................................................. 34

## Other Authorities

Black's Law Dictionary (12th ed. 2024) ................................................ 13

New IEEE Standard Dictionary of Electrical and Electronics
 Terms (5th ed. 1993) .................................................................. 8, 9

Newton's Telecom Dictionary (26th ed. 2011) ......................................... 9

**INTRODUCTION**

Netlist attempts to escape the merits at every turn, groundlessly arguing that Micron raises an unpreserved claim-construction dispute and forfeited most of its damages challenges.  While unpersuasive, the strategy is unsurprising because Netlist's merits arguments likewise fail.  Netlist's experts made key concessions compelling reversal of the '912 patent infringement verdict and vacatur of both damages awards.

***'912 infringement.***  Netlist's infringement position rests on shifting semantic sands.  Netlist first contends that, absent a claim construction, juries are free to adopt any possible "ordinary meaning" of a term—however unmoored from the patent's context.  But *Phillips* forecloses that approach:  Infringement cannot be reconciled with the patent's consistent use of the term "transmitting" to mean "sending."  Further, even under Netlist's definition of "transmitted to," which requires the MRS command signal to "reach[]" or "arrive[] at" just one memory device, Response Brief ("RB") 25-26 (cleaned up), there cannot be infringement.  As Netlist's technical expert conceded—and as Netlist does not dispute—the MRS command signal comes to all devices in a rank *before* just one device is told to act on the command.  Trying to

1

avoid this problem, Netlist abandons its "reach" and "arrive at" definition when defending the evidentiary basis for the verdict, shifting to an argument that the verdict may rest on only one memory device "receiv[ing] the command" in the sense of accepting or acting on it— which requires more than that the command reach or arrive at the device. RB23. But this shift to requiring that only one device execute the command has no basis in the patent and cannot salvage the verdict.

*Damages.* Netlist's damages expert impermissibly attributed to each patent the entire price premium of a feature that Netlist's own experts' testimony and opinions show depends on other, unaccounted-for technology. In striving to downplay these concessions, Netlist rewrites its experts' testimony. Similarly, with respect to the highly prejudicial Rambus license, Netlist invents a non-existent "rigorous comparability analysis." Because Netlist cannot escape what its experts actually said, both damages verdicts must be vacated.

## ARGUMENT

## I.    Netlist Failed To Prove '912 Infringement.

Micron demonstrated (Opening Brief ("OB") 28-45) that no reasonable jury could find that the accused products include a

"command signal is transmitted to only one DDR memory device at a time," Appx10105 3:42-43, on two separate grounds. First, claim scope: The patent consistently equates the term "transmitted to" with "sent to," and undisputed evidence shows that the accused products uniformly send the MRS command signal to every memory device in a rank. OB29-33. Second, even under Netlist's "arrives at" view of the claim, any reasonable juror would have to conclude that the MRS command signal arrives at more than one memory device at a time. OB33, 36-45. Netlist fails to defeat either argument.

### A. There is no substantial evidence under the claim's only reasonable reading.

**1.** Netlist starts by mischaracterizing Micron's claim interpretation. Micron is not arguing that "a command is 'transmitted to' memory devices even if not *addressed to* them." *Contra* RB1 (emphasis added); *see* RB25-27. An "address" simply denotes a destination. And the MRS command signal is "addressed to" all memory devices in a rank because it is placed on a bus (or wire) that leads to each, as Netlist's own expert agreed. Appx20490-20492; Appx20678.

Neither is Micron arguing that the MRS command signal satisfies the limitation because it "moves 'toward'" every device in a rank like "passing traffic" on its way to a completely different place.　*Contra* RB15, 25; *see* RB43.　Rather, as the 18 individual yellow arrows on Netlist's own illustration show, the command signal travels directly *to* (not just "toward," and certainly not past) every memory device in a rank at once:



Appx14734; *see* OB8-9.

Because the evidence unassailably shows that the MRS command signal is "addressed to" every device in a rank, Netlist fixates on a different signal—the DQ0 signal that dictates what each memory device does with the MRS command signal after arrival.　RB31-32.　But the claim is indifferent to whether a device ignores or executes the MRS command.　OB34-36.　Therefore, it is irrelevant whether "commands [are] 'addressed to a single DRAM' at a time using 'DQ0,'" as Netlist

argues.  RB31-32 (relying also on Micron's use of the phrase "per-DRAM addressability" to talk about how the accused products direct just one memory device to execute the command); *see infra* 11-12.

2.  Micron's claim-scope argument is that "transmitted to" cannot reasonably be read to require that the command signal *reach* only one memory device at a time.  OB29-33.  Netlist calls this a "forfeited claim-construction argument."  RB28.  But Micron urges reversal under the same evidentiary-sufficiency standard as Netlist: "whether the jury could reasonably have found the claim limitation … met, considering the facts and the unconstrued claim limitation."  *Freshub, Inc. v. Amazon.com, Inc.*, 93 F.4th 1244, 1250 (Fed. Cir. 2024); *see* OB30; RB28-29.

According to Netlist, absent a formal construction, the jury may adopt any "ordinary meaning" of the limitation.  RB25, 29, 33-35.  It insists that courts reviewing a jury verdict must give controlling weight to "'general purpose dictionaries,'" because "JMOL is not the time to examine claim language 'in the light of the specification.'"  RB29, 33 (quoting *Hewlett-Packard Co. v. Mustek Sys.*, 340 F.3d 1314, 1320-21 (Fed. Cir. 2003)).  But the only case Netlist quotes for those propositions

(*Hewlett-Packard*) predates *Phillips v. AWH Corp.*, which prohibits "elevating the dictionary … [and] the abstract meaning of words … [over] the meaning of claim terms within the context of the patent." 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc).

Contrary to Netlist's assertion, that rule applies as much to assessing jury verdicts as it does to claim construction. The post-*Phillips* JMOL cases that Netlist cites (RB29, 33) relied on the specification to determine the "reasonable" reading of claim language. *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1048-49 (Fed. Cir. 2016); *Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*, 850 F.3d 1302, 1312 (Fed. Cir. 2017).

In fact, this Court has repeatedly rejected findings of infringement based on "ordinary meaning" claim interpretations "untethered to the context of the invention." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1321 (Fed. Cir. 2016); *Wis. Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341, 1348 (Fed. Cir. 2018); OB30-31, 32-33. Netlist attempts to distinguish those cases on the ground that the parties there "raised the claim-construction issue before or during trial." RB35-36. But in both, the Court assessed whether a jury's finding could

6

be reconciled with the "plain and ordinary meaning" of a claim on JMOL. *Wis. Alumni*, 905 F.3d at 1348; *Eon*, 815 F.3d at 1318 (agreeing "both" that district court should have construed claim and, alternatively, "no reasonable jury could have found infringement [under] plain and ordinary meaning"). Neither depended on whether a party sought claim construction.

**3.** As for the patent itself, Netlist argues that only a "single sentence" equates "transmitting" with "sending." RB36 (citing Appx10086 8:52-53). But this is the patent's *sole* sentence describing claim 16's invention. OB16. How the patent "consistently describes" the invention determines the only "permissible construction." *Eon*, 815 F.3d at 1321-22.

Netlist next contends that the patent distinguishes between "transmitting" and "receiving" only to signify "*direction*" and "function": "One component transmits, the other receives." RB37. But if that were so, the claim would say "*received by* only one DDR memory device." After all, according to Netlist, claim 16 identifies the "component … [that] receives." *See* RB37; *contrast* Appx10086 7:43-44 (specifying "signals [that] are received by the register 60"). The phrase

7

"*transmitted to* only one DDR memory device" must signify something different from receipt.

Netlist argues that the patent's Figure 4B "*disproves* Micron's theory that placing a command on a shared bus means the command is 'transmitted to' all DRAMs connected to the bus." RB37-38. But Figure 4B has no bearing on how Micron's products operate. Nor does it shed any light on the disputed term here; the patent's discussion of Figure 4B does not even use the word "transmitted." Moreover, Netlist fails to show that the successive command signals in Figure 4B are issued to different memory devices in the same rank. Figure 4B is best read as showing commands issued to *different ranks*—which would explain why the commands access data from different devices. *See* Appx10086 7:55-8:63 (explaining "selection among ranks of memory devices" to send a "command signal" to "the selected rank only").

Finally, Netlist fails to muster support from technical dictionaries. Netlist quotes the definition of "transfer"—not "transmit"—which one dictionary merely cross-references as a related term. RB30 (citing The New IEEE Standard Dictionary of Electrical and Electronics Terms 1393, 1406 (5th ed. 1993) ("IEEE")). The dictionary actually defines

8

"transmit" as "[t]o send from one place for reception elsewhere"—explicitly distinguishing it from "reception." IEEE at 1406. Netlist emphasizes another technical entry that contemplates "sending electrical signals … *to a destination*." RB29 (quoting Newton's Telecom Dictionary 1178 (26th ed. 2011)); *cf.* RB36 (similar regarding "send"). But the phrase "to a destination" has never signified—let alone required—*reaching* that destination.

### B.    Substantial evidence is absent under Netlist's mistaken claim interpretation.

Even under Netlist's understanding of "transmitted to," the jury lacked substantial evidence of infringement. OB33-41. Netlist says the claim requires a command signal that "reach[es]" or "arrives at" only one memory device. RB25-26 (cleaned up). But unrebutted evidence established that the accused MRS command signal reaches (or arrives at) all devices in a rank. OB36-41.

**1.** The critical, undisputed fact is a matter of sequencing: First, the MRS command signal reaches each device. That is the event that defeats infringement. Only after that does a second signal—DQ0—instruct just one device to execute the command. OB41-45.

Netlist never directly disputes that the MRS command signal is transmitted *before* the DQ0 signal.  Yet Netlist builds its argument around Mangione-Smith's testimony that "non-selected DRAMs do not 'receive' commands."  RB39.  And that testimony was premised on flipping the sequence of the MRS command and DQ0 signals: Mangione-Smith initially said that the DQ0 signal causes non-selected devices to fall "asleep" before the MRS command signal arrives, Appx20364; *see* Appx20474-20475, which Netlist invokes, RB13 (repeating Mangione-Smith's testimony that "non-selected DRAMs … never receive[]" the MRS command signal because "'DQ0' is used to put 'the receivers' into 'standby'").  But Netlist does not contest that Mangione-Smith ultimately admitted the opposite:  "The MRS command gets transmitted before the DQ0 signal."  Appx20474.  No reasonable jury could credit Mangione-Smith's erroneous assertion that non-selected devices do not "receive" the MRS command signal when he contradicted his own underlying premise.  *See Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017).

Moreover, Netlist confirms that a specific timing diagram shows the true sequencing.  *See* OB37-38.  As Netlist admits, the diagram

10

shows the command signal "presented" first at "Ta" and the DQ0 signal "later" at "Tb+1." RB42. Netlist argues only that this schematic "does not show [that] a DRAM actually receives or accepts [the MRS] commands" at that earlier time (Ta). RB41. Netlist stresses that a "blue arrow pointing right" on the diagram indicates that the MRS command "continues *after* time 'Ta.'" RB42; *see* Appx14445. But those annotations explicitly identify the arrow as signifying a period during which "[t]he MRS command … [is] *held in the DRAM*." Appx14445. Devices cannot hold the MRS command signal unless that signal has already reached every device before the DQ0 signal tells non-selected devices to "ignore[]" it. Appx12272.

**2.** Beyond Mangione-Smith's self-contradicted testimony, Netlist cannot point to any evidence of infringement. Netlist repeatedly tries to create the impression that the MRS command signal somehow reaches just one device in a rank by citing evidence that *other* "commands are 'transmitted to' just one DRAM at a time." RB27; *see* RB39-41. But this evidence all relates to the DQ0 signal. And Netlist could not map the DQ0 signal onto the claimed "command signal" because it is not transmitted from the "circuit," as claim 16 requires, Appx10105 3:32-37.

Appx20341 (mapping the claimed "circuit" to the registered clock driver); Appx20682 (DQ0 does not travel through registered clock driver). All this evidence, then, is irrelevant.

Regarding the relevant signal—the MRS command signal—Netlist also invokes Ross's testimony. RB39-41. As Netlist nowhere disputes, Ross never said that the MRS command signal is "transmitted to" only one device; he testified only that non-selected devices will not "act on the signals of the commands sent to it." Appx20535; OB41-43. So Netlist relies instead on Ross's statement that "'receivers' of non-selected DRAMs are 'put in a standby state,' where they 'ignore a command coming in.'" RB39-40 (quoting Appx20533). But it is the DQ0 signal that instructs a device to go into "standby" mode and "ignore" the previously received MRS command signal. *See* Appx20367; Appx20511-20512. Differently put, it is not until the DQ0 signal arrives that a device even becomes "non-selected." So this testimony necessarily refers to events happening *after* the MRS command signal has already reached all devices.

Next, Netlist relies on Ross's bare statements that non-selected devices do not "receive" commands. RB40 (quoting Appx20533 ("no

12

command [being] received"); Appx20533 ("it's not receiving any command")).  But this means only that a device "not selected" to execute the command by the later-issued DQ0 signal does not accept the command or allow it to flow through the device's internal data-input receivers.  Appx20533; *see* Black's Law Dictionary (12th ed. 2024) (defining "receive" as "to take (something offered, given, sent, etc.)" or "give (someone) admittance."); OB41-45.  Netlist acknowledges that "Ross equated … 'no command [being] received'" with the device "'ignor[ing] [the] command,'" RB39-40 (quoting Appx20533)—just as one may ignore a visitor who has reached their home, rather than "receive" her into the living room.  Ross never said that the MRS command signal does not reach or arrive at all memory devices to begin with.

Micron's technical witness Cyr likewise never said that the MRS command signal does not reach or arrive at all memory devices—as would be necessary under Netlist's definition of "transmitted to."  Cyr instead testified that only one memory device "accept[s]" the command in PDA mode.  Appx20564.  Netlist argues that this suffices to establish infringement, because "accept" can sometimes mean "*receive.*"  RB41.  But Netlist cannot defend the verdict with a semantic shell game in

13

which any understanding or use of the word "receive" suffices to establish infringement—even if it has nothing to do with the claim term "transmitted to." Netlist has already conceded that "transmitted to" requires no particular action in response to the command signal's arrival. OB34-36; RB44-45.

For the same reason, the jury could not "reasonably find" infringement based on Netlist's view that when a command "has not been accepted or validated, has not flowed into the DRAM's input buffers, and the DRAM cannot see it internally[,] … [it] has not been *received*." *Contra* RB43. These are actions that may take place after the MRS command signal arrives, depending on the instructions of the later issued DQ0 signal. *See, e.g.*, Appx20859-20860. None of them has anything to do with whether the MRS command signal reaches or arrives at the device beforehand.

**3.** Netlist's wordplay cannot alter how the accused products actually work: They send the MRS command signal to all memory devices, and it reaches each of them—regardless of whether just one ultimately executes the command based on receipt of a later DQ0 signal. OB36-45. Undisputed evidence shows that each device

14

"decode[s]" the MRS command signal, "turn[s] on" a separate data path along which DQ0 signals travel, and then "stor[es]" the MRS command signal for multiple clock cycles until the DQ0 signal arrives. Appx20687; Appx20858-20860; *see* Appx14445.  Netlist fails to explain how a jury could find that a device can decode an MRS command signal, store it, and open a data path in response to it without ever receiving the signal.

The point is not that the jury was "required to credit" Micron's testimony regarding transmission.  RB41 (citing *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015)).  It is that the jury had to accept the only objective technological evidence, "mak[ing] only one finding … reasonable," *MobileMedia*, 780 F.3d at 1168.  *See* OB40-41, 44-45.

## II.    The '912 Damages Award Should Be Vacated For Lack Of Apportionment.

### A.    Netlist failed to apportion.

Netlist does not dispute Mangione-Smith's fundamental concessions: that he did not "consider[]" whether "all of the speed increase over 2400 [MT/s] is due solely to" the '912 patent, and that it "seems reasonable" that "other patents" contributed.  Appx20499; *see*

15

OB46; RB58.  Yet Kennedy relied on Mangione-Smith's opinions to assign the speed increase's entire price premium to the '912 patent. Appx20590-20591; Appx20610; Appx20627-20628; *see* OB46-47.  That left an insurmountable apportionment gap in Kennedy's testimony:  It could not possibly account for the '912 patent's specific incremental value.  OB48-49, 52-54.

Netlist attempts to minimize Mangione-Smith's concessions in four ways—all meritless.

***Attempt #1: Conventional elements.***  Netlist suggests that Mangione-Smith meant merely that he did not consider "conventional elements" contributing to the speed increase.  RB58-59.  But he said no such thing.  He conceded that he did not "consider[]" *any* other possible contributors, without qualification.  Appx20499.

Moreover, his categorical concession concerned a failure to consider contributors to the "increase over" the baseline speed of 2400 MT/s.  Appx20499.  Netlist's "conventional elements" gloss would invert his explicit "increase over" focus, narrowing his concession only to contributors to speeds *up to* that baseline.  *See* RB58-59 ("[T]o achieve speeds above 2,400 MT/s, one needs all the technologies that make

16

chips possible at all, even ones that operate at less than 2,400 MT/s.").
That would distort his testimony beyond recognition.

Mangione-Smith also did not qualify his separate "other patents" concession in terms of features contributing only *up to* the baseline. Nor could he have credibly done so. Netlist does not dispute Kennedy's prior opinion, in the Netlist -203 litigation, that the '506 patent was necessary for and entitled to the entire value of the same speed increase in LRDIMMs. Appx5492-5493 ¶¶ 322-24; OB47. Nor does Netlist dispute that Mangione-Smith provided the basis for Kennedy's opinion there that the '506 patent was necessary for the speed increase. Appx656-663. Netlist cannot now read into Mangione-Smith's testimony an up-to-2400-MT/s limitation when Netlist, Mangione-Smith, and Kennedy all previously attributed the identical benefit to a different Netlist patent.

Netlist protests that Micron did not cross-examine Kennedy about his prior opinion. RB53. But Micron raised the challenge at *Daubert*, establishing inadmissibility. Appx5155-5157; Appx5523; OB50-52. His prior opinion was not merely an inconsistent statement. *Contra* RB53. It demonstrates that his methodology was fundamentally unreliable by

17

attributing 100% of the identical speed benefit to two different patents without any principled basis, or even explanation.  And Netlist's apportionment failure is independently established as a matter of legal insufficiency.  Lack of apportionment does not depend on looking outside the trial record to Kennedy's prior opinion, *contra* RB58; it is evident from Mangione-Smith's testimony itself.   Netlist's failure to apportion thus renders Kennedy's testimony both inadmissible and legally insufficient.  *See* OB50, 60-61; *infra* 23-28.

*Attempt #2: Expert reports.*  Netlist argues that Mangione-Smith's and Kennedy's expert reports analyzed "precisely" the relative-contribution question.  RB53.  But reports not presented to the jury cannot fill the evidentiary-sufficiency gap in Mangione-Smith's trial testimony.  *See Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966).  And regardless, the reports display no consideration of the '506 patent—to which Kennedy previously attributed all the speed increase—let alone any attempt to affirmatively meet Netlist's burden to look outside the '912 patent for technology contributing to the increase over 2400 MT/s. *See* Appx5237-5241; Appx15215-15221.  They just improperly shift the

18

burden, faulting *Micron* for not identifying patents covering the accused products. *E.g.*, Appx5237-5238 ¶¶ 213-14; *see* OB53-54.

***Attempt #3: Non-infringing alternatives.*** Netlist contends that Kennedy automatically satisfied the apportionment requirement because he "compar[ed] the accused products to non-infringing alternatives," RB58-59, which "excluded the value of the speed of non-infringing DIMMs because the non-infringing alternatives ran at speeds of 2,400 MT/s," RB50-51. But rather than "isolate" the value of "one patent as opposed to another," Netlist's non-infringing alternatives analysis captured the entire value of "the 10-25% speed increase[]." *Contra* RB51. Its comparison could not address the disputed apportionment issue: the contribution of the '912 patent, as opposed to other technologies, to this speed increase. So Netlist achieves nothing by repeatedly stating (RB45, 46, 49, 50, 55) that the speed increase itself is "incremental"—meaning, reflects only speeds "from 2,400 MT/s to up to 3,200 MT/s," RB50. The point is that Netlist improperly assigned *all* of that increment's value to the '912 patent. Appx20631.

Netlist says that a non-infringing-alternatives comparison is "textbook apportionment." RB45 (citing *Apple Inc. v. Motorola, Inc.*,

19

757 F.3d 1286, 1315 (Fed. Cir. 2014)); *see* RB49-50.  But just because

there "may" be circumstances where that allocation is appropriate,

*Apple*, 757 F.3d at 1315; *Summit 6, LLC v. Samsung Elecs. Co.*, 802

F.3d 1283, 1296 (Fed. Cir. 2015), does not mean that it is always

sufficient.  Kennedy himself acknowledged that there are "situations

where there is a need to further apportion or split [an] economic

benefit," such as when other technology "contributes."  Appx20611; *see*

Appx20610-20613.  This is exactly that situation, because Kennedy

ignored other contributors to increasing speed over 2400 MT/s.

Micron demonstrated (OB48) that Kennedy could not lay claim to

the entire value of a benefit merely because the asserted patent is

"essential" to it.  *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d

51, 68 (Fed. Cir. 2012); *see Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d

1201, 1232-33 (Fed. Cir. 2014) (standard-essential patents cannot

automatically capture the standard's entire value).  Netlist tries to

cabin *LaserDynamics* to the entire-market-value rule and *Ericsson* to

standard-essential patents.  RB51.  But those decisions reflect general

apportionment principles.  *See, e.g., Ericsson*, 773 F.3d at 1232-33

("Just as we apportion damages for a patent that covers a small part of

20

a device, we must also apportion damages for SEPs that cover only a small part of a standard."); *LaserDynamics*, 694 F.3d at 67 ("The entire market value rule is derived from Supreme Court precedent requiring [apportionment].").  Just like the patentees in those cases, Netlist flunked apportionment by trying to capture a benefit's "'entire value'" without showing that the benefit derives "'distinctly'" from the asserted patent.  *Ericsson*, 773 F.3d at 1233 (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see* OB46, 48-49.

For similar reasons, Netlist gets no further by invoking the "hypothetical-negotiation analysis," RB45, 50, 56, which "must [still] be based on the incremental value that the patented invention adds," *Ericsson*, 773 F.3d at 1226.  Kennedy's hypothetical-negotiation analysis, by contrast, assumed (contrary to *LaserDynamics* and *Ericsson*) that Micron would pay the entire value of the speed increase simply because the '912 patent is necessary to achieve it, Appx20590-20595; Appx20610.  That would be particularly nonsensical here, because without the "other patents" likely required to achieve the speed increase, Appx20499, a '912 license would not have given Micron the full benefit for which Netlist demands payment.

21

Netlist complains that "*Micron* had failed to identify any other relevant technologies." RB53. But Netlist bore the burden to apportion out the value of other technologies contributing to the increase over 2400 MT/s, OB53-54, and Mangione-Smith's concessions show that Netlist did not even attempt to do so, *supra* 15-18. Netlist "cannot simply hide behind" the evidence that Micron produced "to avoid the task of apportionment." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014).

***Attempt #4: Jury instructions.*** Finally, Netlist argues that the district court properly instructed the jury on apportionment. RB59-60. That is a non sequitur: Proper instructions do not immunize a jury verdict from vacatur for lack of legally sufficient or admissible evidence. *See, e.g.*, *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 (Fed. Cir. 2004).

That "the jury awarded $88 million less than Kennedy estimated," RB60, likewise cannot protect an unsupported jury verdict. Even if it could, Netlist ignores that the lower amount conforms to Kennedy's testimony regarding what the jury should do if it found both patents infringed—as it did. OB56; Appx20613; Appx20633.

22

**B.    Micron preserved its apportionment challenge in terms of both insufficiency and inadmissibility.**

Netlist mistakenly argues that Micron forfeited its apportionment challenge by not raising it at *Daubert*.  *See* RB46-49, 54-56.  Micron preserved the challenge in two separate ways: (1) as a matter of legal sufficiency on JMOL, OB50-51, 57-61; Appx575-581; and (2) as a matter of admissibility at *Daubert*, OB50-51, 61-63; Appx5155-5157.

**1.    Micron preserved insufficiency post-trial.**

Netlist does not dispute that Micron's post-trial challenge raised this exact apportionment argument as to both RDIMMs and LRDIMMs.  RB54-56; *see* Appx579-581; OB61-62.  Nor does Netlist dispute that Federal Circuit and Fifth Circuit law—like *Daubert* itself—allows parties to pursue apportionment challenges as a matter of sufficiency, admissibility, or both.  OB60-61.  Netlist instead argues that Micron's challenge is not in "substance" about sufficiency because "Micron does not argue that Netlist failed to present apportionment evidence altogether."  RB55.

Netlist's argument fails.  Even indulging Netlist's premise—that a sufficiency challenge must rest on a total absence of evidence—Micron has presented a sufficiency challenge.  Netlist presented no evidence

23

whatsoever accounting for—and Mangione-Smith conceded he did not consider—the contribution of other technologies to the speed increase above 2400 MT/s.  The total absence of evidence on this legally required "further apportionment"—a step beyond merely isolating the value of the speed increase itself—renders the damages award legally unsupported.  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310-11 (Fed. Cir. 2018) (insufficiency where "Finjan did not perform any *further* apportionment" (emphasis added)).

Moreover, Netlist is incorrect that a sufficiency challenge must assert a total absence of evidence.  The substantial-evidence standard demands more than simply *some* evidence; "sufficient" means more than "any."  *See Cordis Corp. v. Bos. Sci. Corp.*, 658 F.3d 1347, 1358 (Fed. Cir. 2011); *Saposnekoo v. Dep't of Navy*, 835 F.2d 871, at *1 (Fed. Cir. 1987).  Netlist's cited cases (RB55) prove this:  They found insufficiency where patentees presented some apportionment evidence, just not enough.  *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1379 (Fed. Cir. 2021); *Finjan*, 879 F.3d at 1310-11.

24

### 2.    Micron preserved inadmissibility at *Daubert.*

Netlist does not dispute that Micron's *Daubert* motion preserved an admissibility challenge regarding Netlist's failure to apportion as to LRDIMMs.  RB46-49; *see* Appx5155-5157.  But Netlist contends that the challenge (1) concerned only "double-counting," not the argument Micron presents on appeal, RB47-48, and (2) did not address RDIMMs, RB48-49.  Both contentions are unfounded.

***Purported limitation #1: Double-counting.***  Netlist wrongly asserts that Micron limited its apportionment challenge to a double-counting problem with Netlist's '506 patent.  Micron argued that Kennedy "does not reliably apportion the value of the asserted patents," noting that he "does not apportion the value of multiple patents that allegedly" provide the "same feature."  Appx5155-5157.  The motion mentioned Kennedy's assignment of "the same damages" to different patents based on the "exact same technical benefit" to punctuate the more general methodological flaw: that his approach was litigation-driven to assign the speed increase's full value to whatever Netlist patent he had been asked to evaluate.  Appx5155-5156.

25

Micron's *Daubert* reply was clear.  By then, Netlist was "no longer proceeding" with the '506 patent in Netlist -203.  Appx5554.  Though there was no longer any "double-recovery risk," RB47, Micron underscored that the problem persisted:  "Kennedy [had] already assigned 100% of the value of the increase in speed for DDR4 products to [other] technology" and "the contribution of that technology must be apportioned out from damages."  Appx5555.  "As a matter of law and logic"—not the prospect of double recovery—"Kennedy [could not] properly conclude that two groups of patents each contribute the full value of the same feature."  Appx5554.  Micron's counsel explained the same point in detail at the hearing.  Appx258-261.

Netlist is also mistaken that the district court "interpret[ed] Micron's motion as raising only a double-counting argument."  RB48.  The court did not suggest Micron's argument was limited; it simply found, incorrectly, that "the fact that Netlist dropped" the '506 patent obviated the apportionment problem.  Appx270; *see* OB51-52.  Netlist is thus wrong in asserting a forfeiture finding warranting "deference."  RB47-48.

26

***Purported limitation #2: No RDIMMs.*** Micron focused on LRDIMMs at *Daubert* because Kennedy's prior opinion in Netlist -203 was limited to LRDIMMs. The relative-contribution gap in Kennedy's RDIMM analysis was thus not manifest until Mangione-Smith's trial concessions, which broadened the problem to all accused products. OB61-62.

Netlist nevertheless insists that Micron needed to mention RDIMMs at *Daubert* because Kennedy "relied on the same apportionment methodology" as to both LRDIMMs and RDIMMs. RB49. If anything, however, the identical methodology shows why there was no forfeiture: By challenging the relative-contribution gap in Kennedy's methodology at *Daubert*, Micron put the district court "on notice as to the substance of the issue." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000); *see* OB62-63. Netlist's argument that Micron "did not object" at trial, RB49, gets it no further. Micron did not need to object at trial because it had already objected to the substantive flaw in Kennedy's methodology.

Netlist only underscores the absurdity of its forfeiture position by arguing for remittitur, urging this Court to subtract Kennedy's

27

maximum damages number for LRDIMMs to leave damages for RDIMMs. RB60-62. Under that theory, the same methodology would paradoxically be too unreliable for LRDIMMs yet reliable enough for RDIMMs.

Which brings us to another reason to reject forfeiture: Netlist does not dispute that Micron's argument is the same as to both LRDIMMs and RDIMMs, nor that this argument was "fully briefed" and "decided" below. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1322-23 (Fed. Cir. 2020); *see* OB62-63; Appx48-50 & n.1; Appx270. Splitting hairs over products would thwart the interests of justice. In all events, plain-error review of Micron's admissibility challenge as to RDIMMs would warrant vacatur given the error's obviousness and unfairness in subjecting Micron to massive, legally untenable damages. *See* Fed. R. Evid. 103(e); *Crawford v. Falcon Drilling Co.*, 131 F.3d 1120, 1123-24 (5th Cir. 1997).

## C. The proper remedy is vacatur, not remittitur.

Netlist's request for a remittitur becomes relevant only in a very narrow circumstance: if the Court finds an apportionment problem, but accepts Netlist's argument that the issue concerns only admissibility

Case: 25-1936    Document: 21    Page: 34    Filed: 04/16/2026

and that Micron preserved such a challenge only for LRDIMMs. RB60-62. Even then, this Court should still vacate, because Netlist forfeited any remittitur by failing to request it below. Appx699-715; Appx722-736; Appx740-745; Appx751-755; *see Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017) ("[A] party's right to remittitur may be waived.").

## III.  The '417 Damages Award Should Be Vacated For Lack Of Apportionment.

### A.  Netlist failed to apportion.

Netlist fails to overcome Kennedy's dual apportionment failures on the '417 patent—his anchoring of damages in an unclaimed distributed-buffer architecture and his disregard for the contribution of other technologies. OB64-68.

*Apportionment failure #1: Unclaimed feature.* Netlist does not dispute that damages cannot be premised on an unclaimed structural feature. OB65-66. Netlist also does not dispute that the patent claims neither a distributed-buffer architecture nor the multiple-DIMMs-per-channel capability that depends on it (the value of which Kennedy wholly assigned to the patent). OB64-66. Indeed, Netlist concedes that distributed buffers are "unclaimed." RB64. That renders

29

Kennedy's damages testimony legally insufficient for failure to apportion: When asked to identify "th[e] benefit" of the patent, Mangione-Smith testified that "the benefit … is … distributed buffers," Appx20429, and Kennedy testified that "I've based my calculations just on the benefit[]" articulated in "Mangione's testimony," Appx20610; *see* OB64-66.

Netlist does not address this fatal testimony. *See* RB63-65. Instead, it argues that Kennedy did not premise damages on "the unclaimed distributed buffer architecture," but instead valued "the claimed buffer with a particular timing design." RB64 (internal quotation marks omitted). That is simply not what Kennedy or Mangione-Smith said.

Netlist references (RB64) Mangione-Smith's passing, generic commentary regarding what the patent is "about" "at a high level." Appx20374-20375. That commentary never even mentions timing or a "benefit." The only "benefit" Mangione-Smith identified is "distributed buffers," Appx20429, and Kennedy based his calculation "just on th[at] benefit," Appx20610, which Netlist admits is "unclaimed," RB64. Netlist also cites Milton, its VP of Engineering, referring to the

30

"distributed data buffer architecture" as the "invention." Appx20206.
But that also does not help Netlist, since it concedes that is *not* the
invention. RB64.

Netlist argues that, "[w]ithout the patented timing solution, … the
distributed buffer architecture would not 'work properly.'" RB64
(quoting Appx20214; citing Appx20206). But that just restates that the
claimed invention is "essential" to the architecture, which is unavailing
as already discussed. OB48, 66; *supra* 20-21.

Netlist acknowledges that "apportionment is required even when
a [claimed invention] is 'essential,'" but contends that this legal rule
"does not matter" because "the 'distributed buffer architecture' has no
value without Netlist's timing solution, leaving nothing to apportion
out." RB65. Netlist's only reason for asserting "no value," however, is
that the patent is essential to distributed buffers. RB64-65 (quoting
Appx20214). Thus, Netlist's argument just repackages its legally
inadequate essentiality contention.

Moreover, Netlist's value assessment is backwards. Netlist's
witnesses uniformly characterized the distributed-buffer architecture as
"the benefit" precisely because it was the ultimate precondition for the

31

two-DIMMs-per-channel configuration that Kennedy valued. Appx20429-20430 (Mangione-Smith); *see* Appx20215-20216 (Milton: "the distributed buffer design" is what "benefit[s] the memory controller"); Appx20376 (Mangione-Smith: "the distributed buffer … decrease[s] the load," thereby "allow[ing] the memory device to run faster and to have greater capacity"). The claimed timing controls thus have no value without the architecture—they are, at best, merely prerequisites for that structural feature, which Netlist failed to claim. OB70-71.

At minimum, Netlist's "no value without" logic, RB64-65, proves too much. Even if the unclaimed distributed-buffer architecture is worthless without the claimed timing controls, the controls are at least equally worthless without the architecture (Netlist presenting no evidence otherwise).

***Apportionment failure #2: Other contributors.*** Even if the unclaimed distributed-buffer architecture could inform damages, Kennedy failed to apportion by ignoring the contribution of other technologies, simply equating the '417 patent's value with that of distributed buffers and two-DIMMs-per-channel capability. OB66-67.

Netlist does not dispute that, in the Netlist -203 case, Kennedy offered a mirror-image valuation for a different Netlist patent—the '339 patent—assigning it the entire price premium of two-DIMMs-per-channel capability. Appx5494-5495 ¶¶ 332-34; Appx664-668; *see* OB67; RB66-67. Nor does Netlist dispute that, in the same litigation, Mangione-Smith opined that both the '506 and '339 patents "are directed to various aspects" of distributed buffers. Appx5523 ¶ 5; *see* OB67; RB66-67. Yet here, neither Kennedy nor Mangione-Smith even mentioned—much less attempted to account for—these other technologies that they had previously exalted as contributory and even essential. OB67. That is the antithesis of apportionment. *See Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 614-15 (1912); OB48-49.

Netlist largely recycles its defective '912 apportionment defenses. *See* RB66-67. Netlist again suggests that Kennedy's analysis automatically sufficed by including a non-infringing-alternatives comparison. RB66. As already explained, such a comparison can be insufficient. *Supra* 19-20. And it was here: Kennedy's bare comparison did not account for other contributors to distributed buffers and a two-

33

DIMMs-per-channel configuration because the non-infringing alternative lacked those features. *See* Appx20596-20598; OB64-65.

Netlist also repeats its burden-shifting error, faulting Micron for not "introduc[ing] its own evidence" of other contributors. RB66; *see* OB53-54; *supra* 18-19, 22. Furthermore, Netlist ignores that Micron provided evidence of other contributors. At *Daubert*, Micron identified the '339 and '506 patents and Kennedy's prior opinions on them in Netlist -203. Appx5155-5157. Micron's motion in limine similarly highlighted Mangione-Smith's prior opinion in Netlist -203. Appx5509. Netlist reiterates its flawed contention that the opinions were "at most prior inconsistent statements that could have been fodder for impeachment." RB66-67; *see supra* 17-18. Not so: Kennedy's wholesale, unexplained assignment of the same benefits to different patents across cases exposes a systematic flaw that rendered his testimony methodologically unreliable under *Daubert* and insufficiently probative under Rule 403, independent of legal insufficiency. *See supra* 17-18; OB50, 60-61, 75.

Netlist's only new argument is a defense on the merits of the district court's double-counting rationale. RB67. Netlist ventures that

34

there is no "inconsistency" because the relevant patents "cover a similar technical advance" and "[t]here is nothing conceptually wrong with assigning the value of that advance to one or the other of those patents … so long as no double-counting occurs." RB67. That is incorrect: The question is not whether there is a double-recovery risk, but whether Kennedy isolated the '417 patent's incremental contribution—which he did not, as confirmed by his identical methodology and value assignment across patents. OB51-52. Even if the patents are "similar," RB67, "each patent, by law, covers a[n] independent and distinct invention." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1556 (Fed. Cir. 1996).

## B.   **Micron preserved its apportionment challenges.**

Netlist's forfeiture arguments regarding both apportionment failures are unfounded.

*Apportionment failure #1: Unclaimed feature.* Micron preserved its unclaimed-feature challenge both as a matter of legal sufficiency post-trial, Appx581-588; OB72-73, and as a matter of admissibility in its motion in limine, Appx5507-5510; OB74-75.

As to legal sufficiency, Netlist's argument (RB63) fails for the reasons explained above regarding the '912 patent: Critical evidence is missing, and insufficiency does not require a total absence of evidence. *See supra* 23-24.

As to admissibility, Netlist does not dispute that the district court disposed of Micron's motion in limine only by incorrectly relying on outdated precedent to find forfeiture. OB74; Appx53-54; *see* RB63. That is fatal: "A district court necessarily abuses its discretion if its decision"—as here—"rests on an erroneous view of the law." *Jiaxing Super Lighting Elec. Appliance, Co. v. CH Lighting Tech. Co.*, 146 F.4th 1098, 1106 (Fed. Cir. 2025). And the error was prejudicial. Netlist does not even dispute that Micron's presentation sufficed under the correct rule. There is at least a reasonable possibility that the court, applying the correct rule, could find for Micron.

Netlist argues that Micron's motion in limine sought only to prohibit "reference [to] the distributed buffer architecture" because it did not explicitly incant the word "apportionment." RB63. As Netlist elsewhere observes, however, "labeling is irrelevant; what matters is substance." RB55. And the motion substantively concerned an

36

apportionment failure:  It challenged Netlist's reliance on the unclaimed distributed-buffer architecture because "Netlist improperly intend[ed] to use" the architecture in its damages case "to show purported advantages of the claimed technology," Appx5510 (citing Appx5530 ¶ 14), when that feature is not claimed and is instead the subject of the '506 and '339 patents, Appx5508-5509.  Moreover, it is illogical to suggest that the motion did not encompass "the admissibility of Kennedy's damages methodology":  Had the motion been granted, Netlist could not have referenced the architecture, and Mangione-Smith's benefit testimony would have disappeared, Appx20429, eliminating the basis of Kennedy's supposedly apportioned damages calculation, Appx20610.

***Apportionment failure #2: Other contributors.***  Micron preserved its other-contributors challenge at *Daubert*, Appx5155-5157, in its motion in limine, Appx5509, and at the post-trial stage, Appx608; *see* Appx584 n.2.  OB75.  Netlist addresses only *Daubert*, rehashing its contention that "[Micron] presented only a limited 'double-counting' challenge."  RB66 (citing RB46-49).  As explained above (at 25-26), that is incorrect.

37

## IV. Both Damages Awards Are Based On A Technically Noncomparable Rambus License.

Both damages awards are also legally unsupported because they rest on a technically noncomparable Rambus license. OB77-82. Netlist responds that Mangione-Smith "rigorously analyzed technical comparability." RB67. But that "analysis" boiled down to this conclusion: "The technical field of the Rambus Agreement is DDR SDRAM, which in my opinion is technically comparable to the Asserted Patents." Appx5485 ¶ 155; *see* OB77-78. This "conclusory" invocation of the "broad and vague … category" of DDR SDRAM could not serve as the "meaningful comparison point to the specific technology at issue in this case" required "to establish comparability." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022); *see* OB77-80.

Netlist generically states that Mangione-Smith "analyzed two" of the roughly 3000 Rambus patents "in detail." RB67. But while Mangione-Smith provided high-level summaries of these two patents followed by conclusory assertions that each patent "is technically comparable" to "the Asserted Patents, which comprise similar though different technology," Appx5485-5488 ¶¶ 155-63; *see* OB79, he never

38

identified, let alone accounted for, acknowledged technological "differen[ces]," OB80. Netlist ignores this problem.

Netlist next argues that disputes over "the content of [an expert]'s analysis" can only "'go[] to the weight of the evidence.'" RB67 (quoting *Ericsson*, 773 F.3d at 1227). But what this Court has actually held is that "the fact that a license is not perfectly analogous" (rather than the content of an expert's analysis) "generally" (rather than always) goes to weight. *Ericsson*, 773 F.3d at 1227. This Court has repeatedly rejected technical-comparability analyses as too thin to be admissible. *See, e.g.*, *Adasa*, 55 F.4th at 915; *LaserDynamics*, 694 F.3d at 79-80. And Netlist does not even address the district court's total absence of reasoning for rejecting Micron's challenge, which alone constitutes an abuse of discretion. OB80.

Netlist's fallback argument that Micron was not prejudiced, RB67-68, fares no better. Kennedy played up the Rambus license to the jury, invoking $280 million and $780 million figures. Appx20605-20606; *see* OB80-81. Netlist relies (RB68) on two contentions already refuted: (1) that proper instruction on an issue can cure the independent error of hearing inadmissible testimony; and (2) that the jury awarded less than

Kennedy requested. *See supra* 22. Beyond that, Netlist trivializes the prejudicial testimony as "amount[ing] to less than three transcript pages." RB67. But Kennedy's pointed invocation of figures as high as a speculative $780 million "skew[ed] the damages horizon," *Virnetx*, 767 F.3d at 1327, 1333, such that this Court "cannot be sure that the admission of Mr. Kennedy's testimony did not influence the jury's damages award[s]." *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1346 (Fed. Cir. 2025) (en banc). That uncertainty taints both awards, requiring vacatur. OB81-82.

## CONCLUSION

This Court should reverse the '912 infringement verdict and at least vacate both damages awards, if this Court does not dispose of the judgment based on affirming the Board's unpatentability determinations in the pending IPR appeals, Fed. Cir. Nos. 24-2304 & 25-1286, -1296. *See* OB1-2, 82.

40

April 16, 2026                    Respectfully submitted,

                                 /s/ E. Joshua Rosenkranz

Jared Bobrow                     E. Joshua Rosenkranz
ORRICK, HERRINGTON &             Emily W. Villano
  SUTCLIFFE LLP        ORRICK, HERRINGTON &
1000 Marsh Road                    SUTCLIFFE LLP
Menlo Park, CA  94025            51 West 52nd Street
                                 New York, NY 10019
Michael R. Rueckheim            (212) 506-5000
KING & SPALDING LLP
50 California Street, Suite 3300 Melanie L. Bostwick
San Francisco, CA  94111         Robbie Manhas
                                 ORRICK, HERRINGTON &
                                   SUTCLIFFE LLP
                                 2100 Pennsylvania Avenue, NW
                                 Washington, DC  20037

*Counsel for Appellants*

41

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(3) because this brief contains 7,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ E. Joshua Rosenkranz*

E. Joshua Rosenkranz
*Counsel for Appellants*